**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

**CHARLES WALKER** | **CASE NO. 6:23-CV-00970**

**VERSUS** | **JUDGE ROBERT R. SUMMERHAYS**

**WALMART INC ET AL** | **MAGISTRATE JUDGE DAVID J. AYO**

# MEMORANDUM RULING

The present matters before the court are two Motions for Summary Judgment filed by defendants Walmart Inc. [ECF No. 78] and JV Manufacturing, Inc. [ECF No. 73]. For the reasons explained below, both Motions for Summary Judgment are DENIED.

## I.
## BACKGROUND

Plaintiff Charles Walker was injured when he tripped over an old bolt that protruded approximately half an inch from a concrete slab located outside a Walmart distribution center. Walker was employed by Waste Connections to remove trash from compactors and dumpsters.[1] At the time of the accident, Walker was attempting to remove a trash compactor from the Walmart distribution center so that he could haul it away and empty it in a landfill.[2] Walker exited his truck and unhooked the hydraulic lines to the trash compactor.[3] Walker hooked a cable to the trash compactor in order to use a winch to load the compactor onto his truck.[4] According to Walker, "on his way back to the truck to winch the trash compactor onto it, he sustained multiple injuries when he inadvertently tripped over a bolt that was sticking up out of the concrete near the work area." [5]

---

[1] ECF No. 1-2 at ¶ 8.
[2] *Id*. at ¶ 5.
[3] *Id*.
[4] *Id*.
[5] *Id*.

Walker alleges that the protruding bolt remnant had originally anchored an old trash compactor that had been removed. When the old trash compactor was removed, Walmart requested that the new compactor be installed in a different location in the work area. Defendant JV Manufacturing had been hired to remove the old compactor. Instead of removing the bolt that held the old trash compactor in place, JV manufacturing attempted to cut and grind the bolt to the floor. However, it is undisputed that approximately 1/2 inch of the round bolt protruded from the floor. See Figure 1 below:



**Figure 1**

Walker alleges that he did not see the bolt remnant because the floor was discolored and the bolt was rusted, but the tip of his work shoe caught the bolt as he was returning to his truck and caused him to trip and fall.

Walker then filed the present action against Walmart and JV Manufacturing in the 27th Judicial District Court, St. Landry Parish, Louisiana. Defendants subsequently removed the action to the present court based on diversity jurisdiction.

## II.
## THE SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[6] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[8] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[9]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[10] "Credibility determinations are not part of the summary judgment analysis."[11] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

---

[6] Fed. R. Civ. P. 56(a).
[7] *Id.*
[8] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[9] *Lindsey v. Sears Roebuck and Co.,* 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).
[10] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[11] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).

of proof."[12] Under Rule 56(f), a court may "[a]fter giving notice and a reasonable time to respond … (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."

## III.
## Discussion

### A. Walmart's Motion.

Both Walmart and JV Manufacturing argue that Walker cannot prove the essential elements of his premises liability or negligence claims under Louisiana law. In a diversity case such as this one, the Court applies state substantive law.[13] The parties do not dispute that Louisiana law applies to this case. Louisiana state courts offer general recourse for negligence under Louisiana Civil Code article 2315(A), providing that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."[14] When imposing liability for negligence under this article, Louisiana courts employ a duty-risk analysis.[15] To establish a cause of action for negligence, a plaintiff must prove that: "(1) the defendant had a duty to conform his conduct to a specific standard; (2) the defendant's conduct failed to conform to the appropriate standard; (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages."[16]

---

[12] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).
[13] *Moore v. State Farm Fire & Cas. Co*., 556 F.3d 264, 269 (5th Cir. 2009); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).
[14] La. Civ. Code Ann. art. 2315(A) (2001); *MCI Commc'ns Servs., Inc. v. Hagan,* 74 So. 3d 1148, 1155 (La. 2011).
[15] *Ryder v. Union Pac. R.R. Co.,* 945 F.3d 194, 199 (5th Cir. 2019) (citing *Duncan v. Kansas City S. Ry. Co*., 773 So. 2d 670, 675 (La. 2000)).
[16] *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 568 (5th Cir. 2020) (citing *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627 (La. 2006)).

Louisiana Civil Code article 2317.1 governs negligence claims against a property owner or custodian. According to this provision:

> The owner or custodian of a thing is answerable for damages occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect, which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

Louisiana Civil Code article 2322 provides that:

> The owner of a building is answerable for the damage occasioned by its ruin when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction; however, he is answerable for damages only upon a showing that he knew, or the exercise of reasonable case, should have known of the vice or defect which caused damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

Both of these articles of the Civil Code require proof of a defect and that the defect is a condition presenting an unreasonable risk of harm. The defect must be a dangerous condition reasonably expected to cause injury to a prudent person using ordinary care under the circumstances.

Walmart first argues that Louisiana and federal case holds that "minor deviations are not unreasonably dangerous for people exercising ordinary care because the risk of injury is small."[17]Accordingly, these cases have "consistently found that deviations in the ground of less than [1 ½] inch are not unreasonably dangerous under either a general negligence theory or a defect theory."[18] Because the bolt remnant that allegedly injured Walker protruded only ½ inch above the concrete, Walmart argues that, as a matter of law, the bolt was not unreasonably dangerous and that it is entitled to summary judgment.[19] Walmart further argues that, with respect to the duty-risk analysis, the protruding bolt remnant had some public utility in that it was originally part of an

[17] ECF No. 78-1 at 8.
[18] *Id.*
[19] *Id.*

anchor bolt that anchored a trash compactor to the ground. [20] As far as the cost to remove the bolt, Walmart argues that the cost would be prohibitive. [21] According to Walmart, "the current cost to maintain the concrete in its current condition is $1.2-1.3 million, and that to remove all deviations as small as the bolt remnant would be over $10 million." [22] Walmart also argues that Walker was not a store patron or customer and was injured in an area where he should have expected debris. [23] Accordingly, Walmart argues that it owed a lower duty to Walker. [24]

Walker, however, argues that the Louisiana and federal caselaw on minor deviations are distinguishable. He also disputes Walmart's arguments on cost. According to Walker, Walmart's contract with JV Manufacturing included the cost to remove the bolt, the bolt could have been removed or filed completely to the ground, and that evidence of the total cost of remediating all deviations on parking lots and surfaces controlled by Walmart is not the proper cost to consider.

The Court agrees with Walker that there are triable issues with respect to each of the elements of his negligence and premises liability claims. The cases cited by Walmart are distinguishable in that they predominately involve variations in parking lots, sidewalks, and other walkways when wear and soil subsidence cause surface deviations or gaps in joints between concrete slabs.[25] These cases generally recognize the high social utility of sidewalks, walkways

---

[20] *Id.* at 11.
[21] *Id.* at 12.
[22] *Id.*
[23] *Id.* at 13-14.
[24] *Id.*
[25] *Shavers v. City of Baton Rouge/Parish of East Baton Rouge*, 00–1682 (La.App. 1 Cir. 9/28/01), 807 So.2d 883, (writ denied ) 01–2848 (La.1/4/02), 805 So.2d 207 (affirmed trial court ruling that a one-half to two inch raised portion of a sidewalk did not present an unreasonable risk of harm); *Williams v. Leonard Chabert Medical Center*, 98–1029 (La.App. 1 Cir. 9/26/99), 744 So.2d 206, (writ denied ) 00–0011 (La.2/18/00), 754 So.2d 974 (a one-and-one-half inch deviation in a parking lot did not create an unreasonable risk of harm); *Reed v. Wal-Mart Stores, Inc.*, 708 So.2d 362 (La. 1998) (height variation in parking lot of 1.5 to 2 inches did not present an unreasonable risk of harm); *Boyle v. Bd. of Supervisors, La. State Univ.*, 685 So.2d 1080 (La. 1997) (depression of up to one inch in a sidewalk did not pose unreasonable risk of harm); *Leonard v. Parish of Jefferson*, 902 So.2d 502 (La. Ct. App. 2005) (sidewalk height differential of over one inch did not present unreasonable risk of harm); *Buchanan v. Wal-Mart Louisiana, LLC*, No. CV 1:17-1314, 2019 WL 7018879 (W.D. La. Dec. 18, 2019), *aff'd sub nom. Buchanan v. Wal-Mart Stores, Inc.*, 834 F. App'x 58 (5th Cir. 2020) (height variation between adjacent concrete parking lot slabs of

and parking lots.[26] But balanced against this high social utility is the recognition that "[i]t is common for the surfaces of streets, sidewalks, and parking lots to be irregular."[27] Accordingly, it is not the duty of an owner or custodian to "eliminate all variations in elevations existing along the countless cracks, seams, joints, and curbs."[28] Courts also recognize that the cost of "maintain[ing] such surfaces free from defects is likely impossible, and is certainly cost-prohibitive."[29]

However, the bolt remnant here presents a different case for at least two reasons. First, unlike the "countless cracks, seams, [and] joints" that characterize walkways and parking lots, the shaved off bolt remnant at issue here is not a "common" or natural feature of the concrete utility area where Walker was allegedly injured. This alleged defect was created when an old compactor was removed and the bolt anchoring that compactor was cut and shaved down but was not shaved level to the concrete floor or otherwise removed. This undercuts Walmart's argument that remediating the condition would be cost prohibitive based apparently on the cost of eliminating all deviations in Walmart's parking lots and walkways. If this were a case where the alleged defect causing injury was a pavement gap in the walkway of less than 1 ½ inches, the cases cited Walmart would likely preclude recovery. Consideration of the total cost to remediate deviations in

---

one inch did not present an unreasonable risk.); *Hughes v. Sewerage & Water Bd. of City of New Orleans*, 70 So.2d 760 (La.App. 1954) (affirmed trial court ruling that a three feet wide and two feet deep excavation in a sidewalk did not create an unreasonable risk of harm); *Jones v. City of Baton Rouge*, 191 So. 734 (La.App. 1 Cir.1939) (affirmed trial court ruling that a three to four inch depression in the sidewalk did not create an unreasonable risk of harm).

[26] *See, e.g., Morell v. City of Breaux Bridge*, 660 So. 2d 882, 884 (La. App. 3d Cir. 1995) (sidewalks present a high social function because sidewalks allow for pedestrians to travel safely); *Williams v. Wal-Mart Louisiana*, LLC, No. 1:22-CV-02099, 2024 WL 1195593, at *3 (W.D. La. Mar. 20, 2024) ("The tile floor inside Walmart has a high social function as it allows individuals to walk and shop in the store safely and with ease.").

[27] *Buchanan*, 834 F. App'x at 62–63 (quoting *Reed v. Wal–Mart Stores, Inc*., 97–1174 (La.3/4/98), 708 So.2d 362, 363).

[28] *Id*.

[29] *Hotard v. Sam's E., Inc*., No. CV 19-304-JWD-EWD, 2021 WL 2700381, at *8 (M.D. La. June 30, 2021); *see also Chambers v. Vill. of Moreauville*, 2011-898 (La. 1/24/12), 85 So. 3d 593, 601–02 ("It would be fiscally exorbitant to require municipalities to correct all sidewalk deviations of one-and-one-quarter to one-and-one-half inches.")

Walmart's parking lots would be relevant in that case. But that is not the case here were the injury was caused by a bolt remnant in a utility area.

Second, unlike a sidewalk, walkway, or parking lot, the summary judgment record does not reflect high social utility for the bolt remnant. Walmart is correct that the anchoring bolt originally had high social utility to the extent that it anchored a trash compactor to the floor, and the compactor served an important purpose in the distribution center's operations. But at the time of the accident, the anchor bolt was no longer serving that purpose—the compactor had been removed and most of the anchor bolt had been cut and shaved down but the remnant bolt still protruded.

Third, the descriptions and photographs of the utility create a triable issue as to whether the protruding bolt remnant was sufficiently visible that Walker should have seen it and avoided it if he was exercising reasonable care. The bolt remnant appears to be shaved off close to the ground and rusted. It is also located in an area of the utility area where the concrete floor was discolored. In contrast, the courts addressing cracks, seams, and joints in parking lots and walkways often note that the defects are visible and often can be avoided.[30]

Citing *Richard v. Walmart Stores, Inc.*,[31] Walmart also makes the argument that the duty it owed Walker as a third-party vendor's employee was less than the duty owed to patron inside a Walmart store. Even assuming, *arguendo*, that Walmart owed a lesser duty to Walker, the summary judgment record does not negate that duty as a matter of law.

In sum, the caselaw cited by Walmart is distinguishable and does not preclude Walker's claims as a matter of law. The Court concludes that there are triable issues as to each of the essential elements of Walker's claims. A jury may ultimately agree with Walmart that Walker cannot prove

---

[30] *See, e.g., Buchanan*, 834 F. App'x at 62–63.
[31] No. 29929 (La. App. 2 Cir. 1998), 702 So.2d 79.

all of the elements of his claims. But that determination should be made by the jury. Walmart's Motion for Summary Judgment is denied.

**B. JV Manufacturing's Motion.**

JV manufacturing's motion joins in many of the same arguments made by Walmart that Walker's claims are precluded as a matter of law because the defect—the bolt remnant protruding from the concrete floor of the utility area—was minor. For the same reasons that the court denied Walmart's Motion for Summary Judgment, the court denies JV Manufacturing's Motion for Summary Judgement to the extent that it argues that the defect was not unreasonably dangerous as a matter of law. JV Manufacturing makes the additional argument that Walker's claims against it should be dismissed because JV Manufacturing is not an "owner or custodian" of the area where Walker was allegedly injured. Walker, however, argues that he has asserted general negligence claims against JV Manufacturing that do not turn on whether JV Manufacturing was an owner or custodian. The court agrees. JV Manufacturing's Motion for summary judgment is denied to the extent that it is based on its argument that it was not an owner or custodian with respect to the area where Walker was allegedly injured.

## IV.
## CONCLUSION

For the reasons stated above, the Court DENIES the Motions for Summary Judgment filed by Walmart [ECF No. 78] and JV Manufacturing [ECF No. 73].

THUS DONE in Chambers on this 29th day of September, 2026.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE